Oh yes, oh yes, oh yes. The Honorable Kelly Ford, 5th District, State of Illinois, is now in session. Please be seated. Good morning. Good morning, Your Honor. Okay, the first case on our docket this morning, Ford v. Henshaw, 516-0023. Are you ready to proceed? Yes, Your Honor, I am. Okay, you may. This is a daisy-on-a-boo case, I imagine. Apparently, I guess it was about a year and a half ago, the three of you got to take a look at this case. Basically, what had happened the first go-round is that the trial court dismissed the complaint on the grounds of the absolute immunity. And this court looked at what the trial court did and said, well, if I'm interpreting correctly, the court did not rule on sovereign immunity, and if sovereign immunity applied, then the trial court lacked jurisdiction to do anything. So you sent it back to the trial court, and there were some proceedings there. I did try and unsuccessfully take Mr. Henshaw's deposition, but there was some amended complaint filed, as well as there was limited discovery taken. One of the items that was requested in discovery was the original of the so-called FOIA request. Then it came back to the trial court. Did you get that, the FOIA, the original? I got a document that was purported to be the original. I had a document examiner look at it, who offered an opinion that it was not an original. And that's discussed in the brief. The trial court then came hearing, and there is a transcript of the hearing in front of the trial court, who basically made a ruling following Healy v. Vopel, the Supreme Court case, that sovereign immunity applied, did not see a need, as I interpret the trial court's order, to get into the rest of it, and specifically made a finding that it made no difference to the trial court whether there had been a FOIA request or not. The trial court assumed that there had not been a FOIA request, and said that sovereign immunity would apply nevertheless. Now, if you look at the trial court's order, which is in the appendix, you will see that the trial court, I think, made a fundamental error. The trial court made a finding that a state's attorney didn't have the authority to take evidence which was lodged with the state's attorney's office and could give that to the media. And that's premised on what the trial court assumed that's what happened in this case. But that is not what happened in this case. Let me ask a question. Didn't the Supreme Court rule that the state's attorney was subject to the FOIA? Yes, it is. So isn't that why the date becomes significant? I don't think it makes much difference in terms of, for purposes of this appeal, I'm assuming that the state's attorney was a FOIA person, had been compliant with FOIA, and all of that. One of the premises that we're taking in this case is that, in fact, there was no FOIA request. And the reason we say that is even though there is a document that purports to be one, it's not the original. And as we spend a great deal of time in our briefs saying, under the best evidence rule 103 of the Supreme Court's rules of evidence, it does not comply. And I can get into that right now if you would like. I do want to point out, however, that the complaint, it's A10 of the appendix, paragraph 6, alleges that all of the information that was given to the disclosure, counsel calls it a media outlet, I call it a borderline scandalous rave in the complaint. And I think under well-known rules, my allegations have to be taken as true, do they not? But anyway, nowhere in this complaint, nowhere in this record anywhere is there any allegation to support what the trial judge seemed to think was the case, that evidence that had been gathered as part of an investigation had been given over to any kind of an outlet. What's alleged here is these are taped conversations between my client and his mother, who eventually succumbed to cancer, taped conversations between my client and his sister, who eventually succumbed to cancer, taped conversations between my client and his teenage children. None of it had anything to do with the evidence in the case. In fact, what had happened was my client basically pled guilty. He is a convicted felon. I admit that. Let me stop you for a minute and back you up. Your client was back in jail because his bond was raised, his bail was raised, because of allegations that he had had contact with a prosecution witness, given those circumstances. Are you saying that it's an abuse of discretion or in some other manner improper for the state's attorney who's prosecuting the case against him to have possession of his communications from the jail to whoever, especially given the recording before a conversation is initiated that it is subject to being recorded? Your Honor, that question hasn't been posed before, but I think the point is, given those circumstances, for the record, I can see why it would certainly be appropriate for somebody to at least keep a watch and monitor these conversations to make sure that my client isn't making any effort to contact somebody that it's an inappropriate person for my client to contact. Could you extend that rationale to contacting someone for the purposes of having that person contact an individual who may be a prosecution witness? And of course, the assumption in my, I'm taking as true those allegations. I'm not saying in the record that they're accurate, but I'm taking as true those assumptions, given those assumptions. Isn't that reasonable for a prosecutor? Well, I'm not sure it is for this prosecutor, Your Honor, given the long history of antipathy, amnesty, and bias. I think this particular prosecutor never should have been sat on this case in the first place, but perhaps that's something that should have been raised at the time and wasn't. Certainly a reasonable prosecutor under these circumstances, not a woman would want to know who the calls were made to and, in fact, perhaps monitor the calls and listen to the calls to make sure that my client wasn't calling his sister and saying, would you reach out to the prosecution witnesses? But what's interesting about this, Your Honor, is that my client pled guilty in September of 2011, and then afterwards the tapes are linked to the disclosure. Afterwards. In other words, he pled guilty. You've got the record of the criminal trial, the criminal proceedings. There's nothing in that sentence of guilty and probation and the like that says that he's going to be in the future, that his phone calls are going to be monitored. Well, let me – and I don't remember the number. Was it given to the media – let's assume there's a FOIA request. Was that request honored after the period expired where your client, the defendant, would have been able to file some motion in the trial court concerning his guilty withdrawal, modification, whatever? I think the 30 days had expired. Okay. Thank you. As I understand, I think it was September 18th and then the FOIA request. Well, yeah, maybe in November. But it wasn't posted on the disclosure website until sometime thereafter. So in terms of whether my client could have reacted in some way, but my point is – and as I point out, I'm going to start with the Hoffman v. Yack case. It was decided in 1978, but it's still being cited today. And basically, this court, Hoffman v. Yack, set in appropriate circumstances where a university supervisor accused a university professor of not only incompetency, racist views, lack of integrity, and abhorrent sexual behavior. This court said that doesn't have to be a court-claimed case because of the underlying malice, and they felt like even if these statements were made with willful and intent, there's no way that the purposes of the university could have been promoted. And so therefore, it was allowed to go forward in this circuit court. The management case, the decision out of the second district, takes Hoffman v. Yack and basically says if you have malice, you've got malicious behavior on the part of a university, a state actor, in this case a state's attorney, that not only can the case not be brought into court of claim, it can't be brought into court of claim. And that's where I think we're at in this situation, assuming there's no FOIA request. There's no way that the office of the state's attorney in this case is being furred by taking intensely personal conversations of this nature. It doesn't have anything to do with his guilty plea. It doesn't have anything to do with his effort to try and reach out to prosecution witnesses. He's pled guilty, and then the cases are released. So I think it's malicious behavior and it's well-planned. Let's assume that there was a FOIA request. Okay. Would that change your position in your application of Hoffman? Yes, Your Honor. I think it would. And I think… How? How would it change it? Well, because then… Well, for two reasons. At least the Supreme Court has said FOIA applies to the state's attorney. Right. Okay. But FOIA doesn't just give you a blanket release. No, it doesn't. I mean, there are very specific things that can be released. Exactly. And we have cited cases in both of our breaks that say, number one, look, I just think, and I'm not answering your question, but I just have to press the point. Well, but I think… The FOIA request, it violates the best evidence rule. I do not think you can… Well, whether there is a FOIA request or isn't a FOIA request, are you saying that as long as you have malice, you show malice, that the sovereign immunity doctrine doesn't apply? No. I think, for example, if the Henshaw had properly applied with FOIA, regardless of any ill will that he had had with my client, a properly sovereign immunity applies because he doesn't have the discretion not to follow FOIA. He has to follow FOIA. All right. Why didn't he? Number one, he didn't appoint a FOIA officer. Okay? Number two, he didn't claim any exemptions. Well, that's my point, though. These conversations may not have fallen under the FOIA request. They don't. They're family conversations. They don't. That's why we have FOIA officers. That's why we have exemptions. I cited cases that indicate that the FOIA, the person receiving the request, has the obligation to serve these exemptions. And also, I cited the Northern Illinois case, that basically, we have to understand, and it's alleged in our complaint, that these are documents, this is data, that is the property of Jackson County Sheriff, the Jackson County Jail, not the Saleem County. And I cite cases that indicate, in that situation, what Henshaw was required to do, and was established precedent at the time, he should have said, if you want to make a FOIA request, that's the place you go to make your FOIA request. And I have no doubt in my mind, in those circumstances, the Jackson County Sheriff, the Jackson County Jail, is going to assert the exemptions, because we are talking about intentionally private information. And so, even if they can get around the FOIA hurdle, which I do not think they can, they have not complied with FOIA, even if there was an original, which there wasn't in this situation. Now, I cannot underestimate, overstate the fact that the trial court's opinion assumes there is no FOIA request. The trial court's opinion assumes that the information that was given to the disclosure was evidence that had been gathered in some part of an investigation, which it had not. There is no case in the state of Illinois that I'm aware of anywhere that says that any state actor, much less a state's attorney, can go out and take information that has been subject to judicial notice. And so, I'm asking you to take, record it, and give it to the media for the purpose of embarrassing or humiliating his opponents. Now, the argument... Do you think the fact that this newspaper was described as having a reputation for dealing in gossip, rumor, and scandal, do you think that supports the malice argument, the fact that he gave it to that particular paper? I sure do. I sure do. You can take judicial notice if there's other newspapers in Southern Illinois. There's a newspaper right there in Harrisburg, Illinois, that I think any fair-minded person would say is a reputable publication. There's a Southern Illinois that's got wide circulation in there. And I ask the question, what reputable newspaper would find it newsworthy? The fact that my client's mother is dying of breast cancer. How is it newsworthy that my client's sister is dying of breast cancer? How is it newsworthy that these heart-rendering conversations between his teenage daughter and his teenage son about the fact that they're out there in the world having to fend for themselves, and he's in jail? How in the world is that newsworthy? Yet we have this publication, this outlet, which I think basically renders deals in gossip and rumor, not only recording these things, taking the tapes, uploading them, and putting them on a site so that people can open the internet, click on them, and they can listen to all of this stuff themselves. One of the arguments that is being made in this case, Your Honor, is that that's not intentional infliction of emotional distress. Well, that's what I wanted to ask you about, and maybe you're opposing counsels better. The court dismisses under 2-619. Correct. Right? So in doing so, that admits the legal sufficiency of the complaint itself. Correct. And it's only some affirmative matter, then, that allows it to be dismissed. So it seems as to your allegations, because it's a 619, do you agree that the sufficiency of the allegations have already been met, just in light of the way it was dismissed? Thank you, Your Honor, for making my point. There is an argument that's going to be raised, and I'm sure we're going to hear about it in a moment. Well, that's why I thought I'd better ask you. The argument is that I should have raised all of these arguments, not my reply brief that's been waived on appeal. I think you're right. The dismissal was under 2-619, Your Honor. And so I don't think there's been any waive of it. Thank you. Okay. Is it Mr. Dunman? Mr. Chairman. Judge. Oh, I'm sorry. They have them reversed. Okay. I'm sorry. No problem, Your Honor. You don't have them reversed. From the Attorney General's office. Okay. On behalf of the State's Attorney, Henshaw, who asks for affirmance of the Circuit Court's decision, we think it's important. We filed a summary judgment motion in this case on the sovereign immunity issue, and we submitted a couple of affidavits in support of that motion, and really, Mr. Ford submitted no evidence whatsoever in his response. What is the significance of your affidavits if the case was dismissed under 2-619? A 619 admits the legal sufficiency of the complaint. Do you agree with me? I'm not trying to agree with you on that, Your Honor. I think we can still bring affirmative matter and facts to the Court's attention. Oh, absolutely. That is my point. But the preliminary finding is that 619 admits the legal sufficiency of the complaint, but some other affirmative matter, like statute of limitations or whatever, bars proceeding. Right. So what does the affidavits have to do with the complaint itself or the legal sufficiency of the complaint? I mean, I don't understand what you're arguing, I guess, is what I'm saying. Well, we do have a summary judgment motion in this Court that was presented, and this Court could, on an alternative ground, rule that summary judgment should have been granted on the sovereign immunity issue, I would believe. And the affidavits, again, are not disputed or were not rebutted at all. They set forth that there was a freedom of information request. Angela Hauser said that there was, that she made a FOIA request in an affidavit that conformed to Supreme Court Rule 191. It attached a copy of the FOIA request, and Eva Walker, an Assistant State's Attorney, said that the next day she saw, at the very least, a copy of the FOIA request, called for advice to the Attorney General of the Public Access Bureau. And made a notation on the FOIA request that the advice had been to turn the records over. And none of that has been rebutted. Whether there was a written FOIA request or not, and we think the evidence is undisputed, there was a written FOIA request here. They have no admissible contrary evidence in response to our summary judgment motion. But even if it wasn't written... But if a FOIA, let's assume there was a FOIA request, as Justice Goldenberg said. If the State's Attorney went beyond the terms of the Freedom of Information Act, he went with some malicious attitude he had toward this other party, could he still be liable for malice and intrusion upon seclusion? I would say that depends, Your Honor. That's my point. Is there a question of fact here? No, I don't think there's any question of fact here at all. They haven't raised one. They have no evidence, again, in response to our summary judgment motion. And FOIA, I think it's important to understand, too, the Freedom of Information Act has exemptions, but it's not against the law, even if you make a misjudgment as to whether material is exempt. It's not against FOIA to release that material. FOIA sets a floor as to what must be released. It's not a ceiling. It doesn't say you can only release this. So Henshaw didn't violate FOIA by releasing material, even if there was a plausible exemption that could have been raised. Well, let me take that a step further and follow what Justice Gates said. Let's assume that there is a malicious intent. Let's assume that there is a FOIA request and the request is honored. If there is credible proof that could get to a jury on a question of malicious intent and malice on behalf of the person who released information from FOIA, does that eviscerate the argument that that officer is shielded by sovereign immunity by complying with the FOIA request? And if there is such credible evidence, doesn't that defeat your argument of the appropriateness of a summary judgment because there's a genuine issue of material fact? In this case, it wouldn't defeat summary judgment. They came forward with no evidence of malice. No, I'm making this assumption. It would theoretically be possible, but the cases also say, the Welsh case that we cite in our brief, they say that those cases say there have to be specific facts proven that would indicate malice. Now, I understand that, and my question assumes that there are and that there could be. Would that defeat sovereign immunity? I think under the case law it would, yes, it would. But I don't think there are even specific facts pleaded here that would indicate malice. I don't think. But your complaint was dismissed under 619, which says there are sufficient facts pled. Well, this court can conclude otherwise in reviewing the complaint. Let me ask you about your motion for summary judgment because these affidavits were not attached to what we got. So I'm looking at your motion for summary judgment, and the only thing you say under 619, you have two allegations. One, he didn't file it promptly. He didn't file his claim for public disclosure promptly. And for these reasons, the complaint should be dismissed. That's it. I thought our summary judgment motion had more than that. Well, I'm looking at C430 and 431, unless there was an amended one. This is what was in the amendments. I believe there was a memorandum in support of the motion for summary judgment that contained the affidavits. I mean, I don't know. You keep talking about the summary judgment motion, and the motion itself only goes to the statute of limitations, or that's my conclusion, actually. Paragraph 4 says his claim for public disclosure of private facts was not timely filed. And then before that, you have a 2-615, which we all know is failure to plead sufficient facts. Yes. But the court dismissed this on 619, and that's the trouble I'm having. I don't have any affidavits, in briefs at least. So what is it that the plaintiff would respond to that you put in the record or in the memorandum that I don't have? Maybe you can help me. Well, Your Honor, if Your Honor recalls, there was a remand to rule on summary judgment. And I thought our motion for summary judgment did go into that. The memorandum, which followed it in the record, certainly did. The Walker and Henshaw affidavits were in pages 457 through 461 of the record, and I believe they must have been attached to the memorandum. Oh, but it's your obligation to support. Well, I don't know if they're in the record. I don't have the record, so. They are, Your Honor. They're in the record? Yes. And they're in 457, C457, through 461. Okay, thank you. But we also. But under the rules, which governs, the motion or the memorandum? Is there a distinction? I'm not sure there would be a distinction. I believe the motion would have adopted the memorandum. Okay, so we can use both. And previous to that, the remand was concerning sovereign immunity, but, of course, previous to that, there had been a motion to dismiss on both 2615 and 2619 grounds. And I believe the court, in its ruling, in the ruling that's being appealed from now, did also rule under 2615. I think the court did say that the complaint was insufficient. In the original grant of the motion to dismiss prior to the first appeal, the court did rely in part on insufficiency of the complaint. Which court? The circuit court. And then I believe the court reiterated that in the order upon remand. So I think it said for 2619 purposes, sovereign immunity exists. But then I believe it did say there was insufficient pleading. And we believe the circuit court was correct there, too. It basically adopted its prior rulings. Adopted its prior rulings. Right. And not specifically 615, but I think it did include 615. So 615 was prior. Our prior Rule 23? The trial court's ruling prior to our Rule 23. It adopted those reasons and added sovereign immunity. Okay. I think. I'm looking at our. We'll talk about it later. Go ahead. Your Honor brought up the statute of limitations. That's a problem on the invasion of privacy complaint, because it is a one-year statute of limitations. The elected publication was in February 2012. The lawsuit filed in June 2013. And there was no attempt to rely on any kind of discovery rule. Another problem with an invasion of privacy action here is that the pleading is that Mr. Henshaw disclosed this material to two people. That's not enough to sustain an invasion of privacy action. You need to disclose to the public at large. And it's disclosure that discloses to the public at large. But, again, these are issues of fact. No, that's not an issue of fact, Your Honor. It's not an issue of fact as to whether the disclosure was wide enough publicly? If the complaint says that Henshaw's disclosure was to two people, the Housers, according to the complaint, they're the ones who then disseminated it to the public. They're the ones who put the material on the website. So that's not enough to support an invasion of privacy action against the state's attorney under the case law. We cited the Miller case and Doe v. TCB Bank. Let me interrupt you one second. I'm reading from our Rule 23 order. And it says, as the Section 2-615 motion is not relevant to our disposition, we will only discuss the Section 2-619 motion. I'm not sure why the court would have said that or why the 2-615. Well, I just want to make clear that it appears that when we wrote this, Justice Welch, that 2-619 was the issue, not 2-615. It was in terms of sovereign immunity, yes. But I think 2-619. But that admits that the allegations in the complaint are sufficient. But you can raise 2-615 and 2-619 in the alternative. Of course. That is proper.  That is a proper thing to do. You can say the sweetenings are not sufficient. But even if they were, here's affirmative matter that defeats the point. Let me just state for you, sir, that your 2-615 and 619 motion is totally improper under the rules. If you're going to cite a 615 and a 619, you must separate them out and put individual facts that support your allegations. And it's something that if you follow along the Fifth District, you're going to see us writing about that because it's kind of become an issue in the courts. For exactly this reason, is it a 615? Is it a 619? The impact of each rule is different. No, I understand that, Your Honor, and I apologize. You don't have to apologize. I'm just saying that it's something that our orders are starting to talk about. No, I understand. I think numerous decisions in that situation have said, have admonished attorneys to do better but have not necessarily disregarded the arguments. And we would ask that. Oh, absolutely. And we won't. No, I appreciate that, Your Honor. But for that reason, again, I think it's important to understand Henshaw disseminated to two people. Those two people he did not disseminate to the public. Those two people then disseminated to the public. There could be an invasion of privacy action against them but not against Mr. Henshaw. And there's also a problem, we believe, with the intrusion upon seclusion. What counsel tends to emphasize in terms of that is the publication and the dissemination. But intrusion upon seclusion is not about publication. Publication is not an element. It's about an unauthorized seclusion or prying, something like spying on somebody, something like examining a person's books or records when you're not supposed to. And the Lawler case discusses that. And the Lawler case also says it's not about publication. Here the intrusion would have been recording the conversations and possibly Mr. Henshaw listening to them. But that was authorized. And we cite numerous cases saying that prisons can indeed record conversations and monitor them. So I think that's a big problem in terms of the intrusion upon seclusion. If publication's the problem, that's an invasion of privacy action. But the invasion of privacy action should be, if it's against anyone, against the housers who actually disseminated it. Public officials give the media records all the time. And regardless of what counsel might think of disclosure, in terms of a FOIA request, we can't, like, discriminate based on what we think of the media outlet. Public officials can't do that. But, you know, here there was over 500 phone calls. That's a lot of phone calls. It is. I mean, and talking about your mother's cancer, I mean, what does that have to do with anything? Well, here's what I think disclosed, and we discussed this in our brief. In light of the fact that this man had tried to contact his victim, it's possible that members of the public would make a FOIA request and argue we need to listen to all of those tapes to make sure that you are or were protecting the victim and not allowing conversations, you know, and making sure he wasn't engaging in conversations where he was trying to contact the victim or having somebody else try to contact the victim. So I think that would create at least an arguable basis for saying, in this case, public interest might outweigh the privacy interest. And again, Mr. Henshaw, again, public officials will disclose stuff to the media sometimes so the media can take a look and maybe see that there's nothing there. And in terms of that public interest, there was nothing. How about the argument that your client, the state's attorney, was in Saline County and that these were the property of the sheriff of another county? That's a non-starter under FOIA, Your Honor, for this reason. And I'll just answer the question, if I may. Quickly. Yes. Quickly. Under Section 3 of FOIA, he must, 3A, he has to disclose non-exempt public records. Under 2B, the definition of public record includes any, or 2, yes, 2B of FOIA, it includes anything in his possession or control. It doesn't matter if it was Jackson County's record or his. Okay, thank you. Thank you so much. Thank you very much. I appreciate your argument. I apologize for switching the two of you, but it was switched on a record. Thank you. All right. Roboto, do you have any? Your Honor, he inadvertently made the statement that there was an affidavit from Henshaw in this record. There is. There's no affidavit from Henshaw at all. The first time I heard that Henshaw said, I gave the tapes to the disclosure because there might have been some kind of need to monitor this phone conversation, was in their brief. So this is his argument.  We don't know in this record whether or not Henshaw gave the tapes to disclosure because of a FOIA request because we have no affidavit from Henshaw at all. Everything that the Hausers say, everything that Walker says, everybody that says any of these things, it's all hearsay. And it's not even hearsay because those affidavits don't even say that Henshaw told me to do such and such because of the FOIA request. And I think there's a real good reason why Henshaw doesn't want to put an affidavit in this record because I don't think he wants to swear under oath about anything that happened in this record for good reason. Because I think we get an opportunity to actually look at this FOIA request and we can, if we actually ever saw the original, we can ink date it. And it's our prediction, it's our belief that the ink dating is going to show that that FOIA request came after this lawsuit was filed. And that's why we don't have any affidavit from Henshaw. Now, how can they say that Mr. Henshaw had the discretion to answer to a FOIA request and so therefore sovereign immunity applies when we have no affidavit from Henshaw? So you're saying there's no affidavit in the record? None. Nothing. I tried to take his deposition and I was thwarted. Why were you thwarted? Did the court not allow it? Yes, basically. The timing and the motions and I asked and the trial judge said he didn't think it was necessary. But I certainly tried to take his deposition in this case. Do you know when the State's Attorney consulted with the Attorney General to find out whether he could release the tapes? Do you have a date on that? Well, I don't know. Do you know for sure? Because we have an affidavit from Henshaw. Has anybody submitted an affidavit that says that? We have an affidavit from his assistant, but his assistant doesn't say that he got the original FOIA request. Well, no. In one of the briefs I picked up that the State's Attorney evidently consulted with the Attorney General's office to determine whether he could release the tapes. I was wondering what the timing on that was. Well, there is and I don't have it. I mean, was it before the dissemination of the tapes or was it after? It's in the record, Your Honor. The FOIA request, McCassey's report, my document examined can be found at C-304. But also, in motions of summary judgment, the court has, it didn't rule on the motions of summary judgment. I suppose they can assert it on appeal and say that they should have granted the motion for summary judgment. But you'll see that early in the case, my client files an affidavit saying he talked to the Housers and the Housers told him Henshaw gave them the tapes without a FOIA request. So we got a disputed fact there. What there is in terms of communication from the State's Attorney's office, it's not from Henshaw. It's from one of his assistants. And she's not being sued. There's no affidavit from Henshaw. How can you, how can you rule if you're sorry to lose it when we don't even know in this record why he gave the tapes in the first place? Thank you. Thank you. Okay. That will conclude the arguments on this case, 516-023. The matter will be taken under advisement and disposition will be issued in due course. Thank you, gentlemen. Again, my apologies.